IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GREYS AVENUE PARTNERS, LLC, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>COLIN THEYERS,<br><br>Defendant. | CIVIL NO. 19-00079 JAO-KJM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

In their Third Amended Complaint ("TAC"), ECF No. 45, Plaintiffs Greys Avenue Partners, LLC ("GAP") and Castle Resorts & Hotels, Inc. ("Castle") (collectively, "Plaintiffs") bring various claims against Defendant Colin Theyers arising out of a joint venture to convert property in New Zealand into a hotel. Defendant Theyers moves to dismiss the TAC under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiffs failed to state their claims. *See* ECF No. 52. For the reasons stated below, Defendant Theyers' Motion is GRANTED in part and DENIED in part.

# I.    BACKGROUND

## A.    Facts

Because the Court's prior Order Denying Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") sets forth in detail most of the relevant background facts and procedural history, they are not repeated here. *See Greys Ave. Partners, LLC v. Theyers*, 431 F. Supp. 3d 1121, 1124–27 (D. Haw. 2020).  Briefly, Defendant is the director and manager of Greys Avenue Investments Limited ("GAIL"), whose sole shareholder is Mr. Aaron Coupe, and which owned the relevant property in New Zealand (the "Property").  *See* TAC ¶¶ 10–14.  Plaintiffs were approached about converting the Property into a hotel.  *See, e.g.*, *id.* ¶¶ 18–26.  After discussions, GAP and GAIL executed a Heads of Agreement ("HOA") and then a Shareholders Agreement ("SHA") with the expectation that title to the Property would be transferred to a new jointly owned company, Ascent Industries No. 33 Limited ("Ascent"), with GAP and GAIL each holding equal shares in Ascent.  *See, e.g.*, *id.* ¶¶ 24, 28–50.

Additional specific factual allegations contained in the TAC are addressed below as relevant to the parties' arguments regarding whether Plaintiffs have stated the following claims:  Count I—Negligent Misrepresentation; Count II—Intentional Misrepresentation; Count III—Fraud; Count IV—Conversion; Count

V—Unjust Enrichment; Count VI—Securities Fraud; Count VII—Conspiracy to Defraud; and Count VIII—Punitive Damages.

## II.   LEGAL STANDARD

Rule 12(b)(6) allows an attack on the pleadings for failure to state a claim on which relief can be granted.  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).  However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).  A complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

To plead a claim for fraud with particularity, as required by Rule 9(b)'s heightened pleading standard, a party's "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)

3

(quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).  The plausibility

standard of Rule 8 also applies to cases subject to Rule 9(b).  *See Cafasso, United*

*States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).

## III.   DISCUSSION

### A.   Defendant's Preliminary Arguments

Defendant first argues that the doctrine of judicial estoppel precludes

Plaintiffs from alleging facts that did not occur at a February 2018 meeting in

Honolulu because the Court's prior Order (addressing the FAC and concluding it

had personal jurisdiction over Defendant) relied on the fact that Defendant traveled

to Honolulu and allegedly made certain misrepresentations there on that date.

However, the FAC also contained allegations related to the parties' interactions

before Defendant traveled to Honolulu, and their continuing obligations after that

meeting, *see, e.g.*, ECF No. 9 ¶¶ 15–20, 25–29, 35, 39, and Plaintiffs' arguments in

favor of the Court finding personal jurisdiction were in accord, *see, e.g.*, ECF No.

17 at 8–14.  Although the Court emphasized that Defendant's travel to and conduct

within Honolulu were important factors when concluding the requisite minimum

contacts existed, it did not limit the minimum contacts analysis to Defendant's

presence within Honolulu but also relied on Defendant's contacts with the forum

state both before and after the relevant in-person meetings here.  *See, e.g.*, *Greys*

*Ave. Partners*, 431 F. Supp. 3d at 1128–32.  Judicial estoppel is therefore not

applicable. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) ("This court has restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." (citations omitted)).

Defendant also asks the Court to abstain from exercising jurisdiction under the *Colorado River* doctrine, which applies when "considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,' may justify a decision by the district court to stay federal proceedings pending the resolution of concurrent state court proceedings involving the same matter." *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)) (other citation omitted).  This limited doctrine applies only in exceptional cases, where there is a clear justification for a stay or dismissal. *See R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 978 (9th Cir. 2011).  Defendant contends *Colorado River* abstention applies here because Plaintiffs initially sued both him and Mr. Coupe in this action, but then dismissed Mr. Coupe and filed suit against Mr. Coupe in Hawaiʻi state court raising issues similar to those raised in this federal action.  But that state action against Mr. Coupe already concluded in a

final, default judgment in Plaintiffs' favor against Mr. Coupe, and so is not a concurrent case.[1]  *See* ECF No. 52-3; ECF No. 55 at 14 n.5, 15.

Furthermore, a stay or dismissal under *Colorado River* "is inappropriate when there is a good chance that the federal court would have to decide the case eventually because the state proceeding will not resolve all of the issues in the federal case." *R.R. St. & Co.*, 656 F.3d at 983 (citation omitted).  Defendant does not dispute that Plaintiffs bring claims here (e.g., unjust enrichment and conspiracy) that were not brought in the state court action against Mr. Coupe.  *See* ECF No. 55 at 16.  Therefore, the Court is not convinced that, where a state court action has already been resolved in Plaintiffs' favor by default judgment against one party, Plaintiffs' related suit in federal court against a different defendant, which raises some distinct claims, must be stayed or dismissed.  *See, e.g.*, *R.R. St. & Co.*, 656 F.3d at 979 (noting that relevant factors include whether state court proceedings adequately protect the rights of federal litigants, whether state court proceedings will resolve all issues before the federal court, and whether concurrent proceedings would result in piecemeal litigation, i.e., duplicating judicial effort and

---

[1]  At the hearing, Defendant emphasized that the state case against Mr. Coupe overlapped at least in part with this proceeding.  But "[c]ourts generally rely on the state of affairs at the time of the *Colorado River* analysis[,]" *R.R. St. & Co.*, 656 F.3d at 982 (citation omitted), so what matters is that the state case is not pending *now*.

potentially resulting in different outcomes).  The Court declines to stay or dismiss this action under *Colorado River*.[2]

## B. Negligent Misrepresentation and Intentional Misrepresentation (Counts I and II)

Defendant contends that Counts I and II fail for a number of reasons. Defendant first argues that the plain terms of the HOA preclude Plaintiffs from alleging they relied on oral representations that the property was subject to a $14.8 million mortgage and that GAIL would transfer title to the property to Ascent upon execution of the SHA.  At this stage, Plaintiffs have plausibly alleged justifiable reliance on these communications.  *See, e.g.*, TAC ¶¶ 21–50, 58–59, 62–63. Defendant does not dispute that justifiable reliance is a question of fact that assesses all of the circumstances of a particular case rather than incorporating a purely objective standard.  *See Honolulu Disposal Serv., Inc. v. Am. Benefit Plan Adm'rs, Inc.*, 433 F. Supp. 2d 1181, 1190–91 (D. Haw. 2006); *see also Ill. Nat'l Ins. Co. v. Nordic PCL Constr., Inc.*, Civil No. 11-00515 SOM/KSC, 2013 WL

---

[2]  *Horowitz v. Sulla*, Civil No. 15-00186 JMS-BMK, 2015 U.S. Dist. LEXIS 121672, at *23 (D. Haw. Sept. 11, 2015), cited by Defendant, is inapposite.  The court there concluded a stay was appropriate in part because there was little chance it would have to address the federal complaint:  once the still-pending state action reached a final judgment, it would have preclusive effect and thus resolve most of the federal action.  *See id.*  Plaintiffs note the default judgment against Mr. Coupe will never have any preclusive effect against Defendant here.  *See* ECF No. 55 at 14 n.5 (noting lack of privity and that default judgment is not a final judgment on the merits).

5739639, at *11 (D. Haw. Oct. 22, 2013).  His arguments that the HOA negates any justifiable reliance are therefore misplaced at this juncture, particularly because he has not articulated how the HOA unambiguously provides that refinancing (or anything else) was a condition precedent to transferring the Property subject to $16.2 million indebtedness.[3]  And, as Plaintiffs note, the type of extrinsic evidence contained within their allegations may be admissible here because the parol evidence rule only precludes the use of such evidence to vary or contradict the terms of an *unambiguous* and integrated contract—and even then there remains an exception that permits extrinsic evidence to prove fraud.[4]  *See Hawaiian Ass'n of Seventh-Day Adventists v. Wong*, 130 Hawai'i 36, 45, 305 P.3d 452, 461 (2013);  *Pancakes of Haw., Inc. v. Pomare Props. Corp.*, 85 Hawai'i 300, 310–11, 944 P.2d 97, 107–08 (App. 1997).  The same is true regarding the

---

[3]  *See* ECF No. 45-5 at 2 (providing that GAIL "*shall forthwith* contribute the Property to Ascent subject only to the current debts in an amount not exceeding $16.2 million" and also that "GAIL and its related parties *intend* to seek a release from any obligations in respect of that existing debt . . . subject to approval of the lender(s) and subject to approval of terms of the replacement financing and the release by GAIL and GAP" (emphases added)); *see also, e.g.*, TAC ¶¶ 33–34, 38, 42, 45 (alleging Defendant repeatedly represented the mortgage was $14.8 million, but explained the agreement would provide $16.2 million based on other debt owed to a tenant; also alleging Defendant represented title would be transferred upon execution of the SHA).

[4]  At the hearing, Defendant's counsel argued that New Zealand law regarding contract interpretation applies here; however, Defendant failed to argue as much in his briefs—or respond to Plaintiffs' argument regarding the parol evidence rule under Hawai'i law.  The Court therefore will not address this issue at this time.

representation regarding New Zealand Mint's right of first refusal: accepting the Plaintiffs' allegations in the TAC as true, Defendant has not shown why their knowledge that this right existed negates, as a matter of law, any justifiable reliance on representations made regarding the present status of that right. *See, e.g.*, TAC ¶¶ 27, 30–34, 54 (alleging Plaintiffs' counsel inquired about the right of first refusal and Mr. Coupe responded there were "zero further obligations to the NZ Mint"). For these reasons, at this stage, the Court cannot conclude as a matter of law that Plaintiffs would be unjustified in relying on statements about the mortgage on the Property and the status of a right of first refusal, and thus GAIL's ability to transfer the Property.

Defendant next argues that Counts I and II fail because the alleged misrepresentations were promissory in nature, which is insufficient to state these claims under Hawai'i law because

> fraud cannot be predicated on statements which are promissory in their nature, or constitute expressions of intention, and an actionable representation cannot consist of mere broken promises, unfulfilled predictions or expectations, or erroneous conjectures as to future events, even if there is no excuse for failure to keep the promise, and even though a party acted in reliance on such promise.

*Stahl v. Balsara*, 60 Haw. 144, 149, 587 P.2d 1210, 1214 (1978) (citation omitted). Here, Plaintiffs' allegations that Defendant misrepresented the indebtedness on the mortgage and the status of a third party's right of first refusal plausibly relate to

past or existing facts, as opposed to the occurrence of a future event.  Further, with regard to the allegation that Defendant promised to transfer the property upon execution of the SHA, such a promise relating to future action or conduct may be actionable if the promise was made without the present intent to fulfill that promise.  *See E. Star, Inc., S.A. v. Union Bldg. Materials Corp*., 6 Haw. App. 125, 140, 712 P.2d 1148, 1159 (1985).  Plaintiffs have plausibly alleged as much here, given their specific allegations regarding Defendant's misrepresentations and Defendant's awareness of GAIL's inability to actually transfer the Property, as well as Plaintiffs' allegations regarding the events that unfolded after the SHA was executed.  *See, e.g.*, TAC ¶¶ 51–54; *see also Haw. Cmty. Fed. Credit Union v. Keka*, 94 Hawaiʻi 213, 230, 11 P.3d 1, 18 (2000) (holding plaintiffs raised genuine issue of material fact merely by averring they discussed the possibility of lowering their interest rate with a loan officer, who represented it would be "no problem" to do so in the future, because a reasonable factfinder could construe that as a promise made without a present intent to fulfill it—which was further bolstered by the fact that the loan officer later directly contradicted that earlier promise).[5]

Defendant also contends that Counts I and II fail because Plaintiffs insufficiently allege he ratified Mr. Coupe's false statements or, alternatively, have

---

[5]  Indeed, *Keka*—and the only case that Defendant cited—reveal that this issue is
(continued . . .)

failed to allege the elements of fraud by omission.  While Defendant argues

Plaintiffs' ratification theory is premised only on him being copied on emails that

Mr. Coupe sent to Plaintiffs or their attorneys, *see* ECF No. 52 at 25, Plaintiffs

actually allege that Defendant affirmatively and directly communicated to

Plaintiffs that Mr. Coupe's prior email—containing alleged misrepresentations

regarding indebtedness and the right of first refusal—included the answers to

Plaintiffs' questions, and additionally that Defendant himself forwarded to

Plaintiffs an email from his and GAIL's attorney confirming title would be

transferred upon execution of the SHA.  *See* TAC ¶¶ 28–35.  With regard to Count

II, this contains the necessary level of particularly under Rule 9(b)[6] and Defendant

cites no authority that, as a matter of law, such conduct is insufficient to constitute

an affirmative misrepresentation.  Additionally, as Plaintiffs note, ratification can

be either express or implied and, if the latter, "ratification . . . depend[s] on the

_____

(. . . continued)
better addressed at summary judgment rather than at this early stage.  *See Shoppe v. Gucci Am., Inc.*, 94 Hawaiʻi 368, 387, 14 P.3d 1049, 1068 (2000) (concluding plaintiff failed to raise issue of fact as to her fraud claim at summary judgment because there was no evidence of a promise of future employment).

[6]  As this Court has recently noted, "the judges in this district have consistently concluded that a negligent misrepresentation claim is not subject to FRCP 9(b) because it does not require intent."  *Maeda v. Pinnacle Foods Inc.*, 390 F. Supp. 3d 1231, 1257 (D. Haw. 2019) (citations omitted).  Thus, the heightened pleading requirement under Rule 9(b) applies only to Count II, and not to Count I.

facts [and circumstances] of each particular case"—further supporting that Defendant's arguments are misplaced at this juncture. *See Cook v. Sur. Life Ins., Co.*, 79 Hawai'i 403, 411, 903 P.2d 708, 716 (App. 1995), *as amended* (Aug. 30, 1995) (quoting *Scott v. Pilipo*, 25 Haw. 386, 390 (1920)). The Court therefore concludes that, for purposes of this Motion, Plaintiffs have sufficiently alleged Defendant made false representations.

Finally, Defendant claims that Plaintiffs' allegations related to an inaccurate balance sheet do not meet Rule 9(b)'s heightened pleading standard (which, again, applies only to Count II). Defendant cites an example where another district court dismissed a fraud claim where the Plaintiff alleged an inaccurate report because he failed to describe how it was inaccurate or "describe the report in any detail so as to know its contents, who made it, and where and when it was made." *Jonnada v. Liberty Ins. Corp.*, Case No. CIV-19-456-D, 2019 WL 6119233, at *4 (W.D. Okla. Nov. 18, 2019). Here, though, Plaintiffs allege Defendant provided the allegedly inaccurate balance sheet in an attachment to a January 29, 2018 email wherein Defendant himself explained the markings on the balance sheet, and Plaintiffs have attached both that email and the balance sheet (dated January 31, 2018) to the TAC. *See* ECF No. 45-4 at 1–3. Plaintiffs here also include why the balance sheet was inaccurate, alleging it overstated GAIL's assets and understated its liabilities. *See* TAC ¶¶ 58, 62. And other allegations in the TAC further set forth Plaintiffs'

theory as to how GAIL's assets were overstated and its liabilities were understated, i.e., that the $14.833 million reflected the debt owed to the Bank of New Zealand secured by the Property (when it did not) and the other money GAIL owed to the Bank was secured by other assets owned by Mr. Coupe and that Mr. Coupe had assets outside GAIL's ownership secured in favor of the Bank (when it was not and he did not).  *See* TAC ¶¶ 36, 52.  Thus, contrary to the plaintiff in *Jonnada*, Plaintiffs here have provided sufficient detail to premise their claim on this balance sheet.  *See Vess*, 317 F.3d at 1106 (noting plaintiff must set forth more than neutral facts necessary to identify transaction, and instead set forth what is false or misleading about a statement, and why it is false).

For these reasons, the Court DENIES Defendant's motion to dismiss Counts I and II.

## C.    Fraud (Count III)

Defendant argues that Count III is duplicative of Count II because fraud and intentional misrepresentation are the same under Hawaiʻi law, such that the Court may strike Count III under Rule 12(f).  *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant . . . matter.");[7] *see also Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005) ("A 'redundant'

---

[7] Defendant's briefs repeatedly refer to Rule 12(c), which addresses a motion for judgment on the pleadings.  The Court presumes he intended to cite Rule 12(f), which addresses a motion to strike any redundant matter.

matter consists of allegations that constitute a needless repetition of other averments or which are foreign to the issue to be denied." (citations omitted)).

Plaintiffs do not respond to this particular argument, and thus concede that Count III is duplicative of Count II.  Instead, they simply summarize that Count III alleges that Defendant committed fraud because he never intended for GAIL to comply with the HOA and transfer the property to Ascent subject to indebtedness of $16.2 million because it was actually subject to an $18.7 million mortgage and New Zealand Mint had a right of first refusal.  *See* ECF No. 55 at 27.  But these allegations are already included under Count II.  *See, e.g.*, TAC ¶¶ 21, 24, 29, 31–34, 36, 42, 45, 47–48, 51, 53, 62–63.  And in arguing why Count II should survive Defendant's Motion, Plaintiffs' summary of Count II mirrors its summary of Count III.  *See, e.g.*, ECF No. 55 at 24–25  ("[W]hen Defendant executed the HOA whereby GAIL promised to transfer title to the Property to Ascent forthwith, Defendant knew that GAIL could not perform that promise[.]  Defendant, as the sole director and executive officer of GAIL, is personally liable for the corporation's fraudulent actions.").

The Court therefore STRIKES Count III because it is duplicative of Count II.

**D.     Conversion (Count IV)**

Defendant argues Count IV must be dismissed because GAP cannot plead an essential element of conversion under Hawaiʻi law, namely that there could not have been a taking from GAP *without its consent* because GAP voluntarily wired funds to Defendant as contractually required under the terms of the HOA.  But the TAC alleges that after GAP wired these funds, Defendant took and assumed ownership of them and, without GAP's knowledge or consent, used and distributed these funds in ways that were contrary to and inconsistent with GAP's instructions and the parties' agreements—doing so for his own benefit and the benefit of others rather than solely for the benefit of the parties' joint venture.  *See* TAC ¶¶ 70–71; *see also* ECF No. 56 at 15 (Defendant arguing GAP wired money to *Ascent* per the HOA); ECF No. 45-5 at 2.  At this stage, that is sufficient to plausibly allege conversion.  *See Tsuru v. Bayer*, 25 Haw. 693, 697 (1920) ("Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein[.]").  Defendant's reliance on *Molokai Services Inc. v. Hodgins*, 142 Hawaiʻi 150, 414 P.3d 202 (table), No. CAAP-15-0000464, 2018 WL 1083050 (App. Feb. 28, 2018) (mem.), is misplaced as that case concerned a conversion claim that was based only on voluntary payments of rent pursuant to lease terms.  *See id.*, 2018 WL 1083050, at *9.  Defendant's motion to dismiss Count IV is therefore DENIED.

E.     **Unjust Enrichment (Count V)**

Defendant argues GAP fails to state a viable claim for unjust enrichment for a number of reasons.

Defendant contends the claim necessarily fails because Hawaiʻi "observes the principle, long-invoked in the federal courts, that 'equity has always acted only when legal remedies were inadequate.'" *Porter v. Hu*, 116 Hawaiʻi 42, 55, 169 P.3d 994, 1007 (App. 2007) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959)).  Thus, "[w]here the parties to a contract have bargained for a particular set of rights and obligations, all claims involving those express rights and obligations properly lie in contract law and not in equity." *AAA Haw., LLC v. Haw. Ins. Consultants, Ltd.*, CV No. 08-00299 DAE-BMK, 2008 WL 4907976, at *3 (D. Haw. Nov. 12, 2008).  This means that equitable remedies like unjust enrichment "are not available when an express contract exists between the parties concerning the same subject matter." *Sung v. Hamilton*, 710 F. Supp. 2d 1036, 1064 (D. Haw. 2010) (citations omitted).  Here, while Defendant points to a contract between GAP and GAIL, *see* ECF No. 45-5 at 1, he provides no support that this means GAP may not bring an unjust enrichment claim against him, who is not a party to that contract.  At this stage, then, Defendant has not demonstrated this is reason to dismiss GAP's claim for unjust enrichment.

Defendant also argues that, as the director of a company, he cannot be personally liable for an unjust enrichment claim.  The case he relies on, though, states only that a director "can be held liable for the torts *committed by corporations*," and that principle has not been extended to non-tort claims. *Tachibana v. Colo. Mountain Dev., Inc.*, No. 07-CV-00364, 2011 U.S. Dist. LEXIS 37599, at *18 (D. Haw. Apr. 5, 2011) (emphasis added) (citations omitted). Construing the TAC in the light most favorable to GAP, it does not allege GAIL was unjustly enriched, but instead, that Defendant himself was personally unjustly enriched.  *See, e.g.*, TAC ¶ 77 ("Defendant Theyers *personally* received the benefit of in excess of NZD $600,000 of Plaintiff GAP's funds[.]" (emphasis added)); *see also id.* ¶ 71 (alleging Defendant disbursed some of these funds to himself). Defendant has thus not shown that dismissal is warranted at this stage on this basis.

Defendant also contends GAP has alleged a "three-cornered restitution claim" because it does not allege GAP made payments directly to him.  ECF No. 52 at 29.  But reading the TAC in GAP's favor, Plaintiffs have alleged as much by alleging it "conferred a benefit on Defendant Theyers by wiring funds to a bank account controlled by Defendant Theyers."  TAC ¶ 76.  Regardless, even accepting Defendant's argument that the funds were wired to *Ascent* rather than to Defendant, GAP has alleged a superior legal right to the benefit allegedly retained by Defendant because it alleges the wired funds were to be used for the purpose of

converting the Property into a hotel (i.e., for the benefit of Ascent and thus necessarily, GAP and GAIL, the parties to that joint venture) rather than for Defendant's personal benefit or towards initiatives other than the hotel conversion. *See, e.g.*, TAC ¶¶ 71, 77; *see also* ECF No. 45-5 at 1–2.

For these reasons, the Court DENIES Defendant's motion to dismiss Count V.

## F.    Securities Fraud (Count VI)

Defendant contends that GAP cannot state a claim for securities fraud under either federal or state law because, under either law, GAP's shares in Ascent do not constitute a covered "security."  The parties address two tests used to determine whether a particular investment constitutes a security under federal and Hawai'i law:  (1) the *Landreth* test and (2) the *Howey* test.  The Court agrees that neither test is met here and that Count VI must therefore be dismissed.

First, under federal law, "when an instrument is both called 'stock' and bears stock's usual characteristics," there "is no need . . . to look beyond the characteristics of the instrument to determine whether the [Securities] Acts apply." *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 686, 690 (1985) (citing *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 850 (1975)).  Still, the fact that an instrument bears the label "stock" is insufficient alone; it must also possess stock's usual characteristics, the five most common of which are:  "(i) the right to receive

dividends contingent upon an apportionment of profits; (ii) negotiability; (iii) the ability to be pledged or hypothecated; (iv) the conferring of voting rights in proportion to the number of shares owned; and (v) the capacity to appreciate in value." *Id.* at 686 (footnote and citation omitted).

Here, the instrument fails the *Landreth* test at the outset because it is not labeled "stock," but instead, repeatedly referred to only as "shares" and a "share transfer" (aside from a single conclusory reference to "stock" in the TAC). *See, e.g.*, TAC ¶¶ 24, 49, 82, 84, 88; ECF No. 45-5 at 1 (referring to a "*Shareholders* Agreement" (emphasis added)); ECF No. 17-1 at 19 ("Share Transfer" document referring to them as "Fifty (50) Ordinary Shares" and listing the price "per share").[8] GAP argues that the label "share" is a distinction without a difference. However, the specific label of *stock* was essential to the *Landreth* test—and Plaintiffs have not cited any case holding that an instrument *not* labeled stock was nonetheless a security under *Landreth* solely because it had a stock's usual characteristics. *See, e.g.*, *Landreth*, 471 U.S. at 693 (discussing "[i]nstruments that

---

[8] "[I]n order to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based, a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (alterations, internal quotation marks, and citations omitted).

bear *both the name* and all of the usual characteristics of stock" (emphasis added)); *see also id.* at 694 (declining to address whether instruments labeled "notes" or "bonds" are similarly standardized enough to rest on their names, and holding "only that 'stock' may be viewed as being in a category by itself for purposes of interpreting the scope of the Acts' definition of 'security'").[9]  Thus, GAP has not alleged a security covered by federal securities laws under the *Landreth* test, nor pointed to any allegations in the TAC that plausibly support that the economic realities of the shares in Ascent are closely akin to stock.  The same is true under Hawaiʻi law, which similarly applies the *Landreth* test only when a security is labeled "stock."  *See Fong v. Oh*, 116 Hawaiʻi 187, 198–99, 172 P.3d 499, 510–11 (2007), *as corrected* (Dec. 19, 2007).

GAP also offers the conclusory argument that, because the definition of "security" under federal and state law includes "transferable shares," and the parties' agreement here refers to "shares," this label alone is sufficient to allege a

---

[9]   Although Plaintiffs did not cite it, the Court is aware of *Stoyas v. Toshiba Corp.*, 896 F.3d 933 (9th Cir. 2018), which examined an instrument that allowed "seamless investment in foreign companies akin to owning shares of U.S. companies."  *Id.* at 939–42.  But in *Stoyas*, the Ninth Circuit noted *not only* that the relevant instrument had the characteristics of stock under *Landreth*, *but also* that "the economic reality of [the instrument] is closely akin to stock" and that such instruments are "consistently referred to and treated as securities by the parties, depository institutions, the Securities and Exchange Commission, courts, and scholars."  *Id.* at 942 (citations omitted).  Plaintiffs have not alleged as much here.

violation of these laws.[10]  *See* ECF No. 55 at 31.  It cites no authority to support

this argument that pointing to this label alone is sufficient to allege a security.  *See*

*United Hous. Found.*, 421 U.S. at 848–49 ("Because securities transactions are

economic in character Congress intended the application of these statutes to turn

on the economic realities underlying a transaction, and not on the name appended

thereto."); *see also id*. at 850 n.15 ("Indeed in *Tcherepnin* [*v. Knight*, 389 U.S. 332,

336 (1967),] the Court explicitly stated that 'form should be disregarded for

substance,' and only after analyzing the economic realities of the transaction at

issue did it conclude that an instrument called a 'withdrawable capital share' was,

in substance . . . a 'transferable share.'"); *cf. Reves v. Ernst & Young*, 494 U.S. 56

(1990) ("Thus, the phrase 'any note' should not be interpreted to mean literally

'any note,' but must be understood against the backdrop of what Congress was

attempting to accomplish in enacting the Securities Acts.  Because the *Landreth*

*Timber* formula cannot sensibly be applied to notes, some other principle must be

developed to define the term 'note.'" (footnote omitted)).  Again, *Landreth*

declined to address whether "notes" or "bonds" "or some other category of

instrument listed in the definition might be shown 'by proving [only] the document

itself.'" 471 U.S. at 694 (quoting *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344,

---

[10]  If anything, the relevant statutes' delineation of these two distinct instruments
tends to undermine Plaintiffs' argument above that "share" is synonymous with
"stock."

355 (1943)); *see also id.* (noting that the portion of *C.M. Joiner* "equat[ing] 'notes' and 'bonds' with 'stock' as categories listed in the statutory definition that were standardized enough to rest on their names" was dictum).  Thus, GAP fails to offer any support as to why the label "shares" alone is sufficient here, nor has it pointed the Court to allegations in the TAC that could plausibly support that the economic realities of the share transfer render the Ascent shares a security under federal or state law.  Because the parties instead both address in detail whether the share transfer is an investment contract under *Howey*, the Court will do the same.  *Cf. D.R. Mason Constr. Co. v. GBOD, LLC*, No. 17-cv-01779-BAS-WVG, 2018 WL 1306425, at \*5–6 (S.D. Cal. Mar. 13, 2018) (applying *Howey* where complaint referred to "shareholder").

The parties' SHA and the subsequent share transfer do not meet the *Howey* investment contract test.  *See SEC v. W. J. Howey Co.*, 328 U.S. 293, 299–301 (1946).  An investment contract, a type of security listed in the Securities Act, is a "flexible . . . principle," able to "meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits."  *Id.* at 299.  Under *Howey*, the three requirements for establishing an investment contract are:  (1) "an investment of money," (2) "in a common enterprise," and (3) "with profits to come solely from the efforts of others."  *Id.* at 301.  The notion of "solely" in the third prong is not meant to create a strict limitation; instead, the

22

third prong requires only that "the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *SEC v. Glenn W. Turner Enters., Inc.*, 474 F.2d 476, 482 (9th Cir. 1973).  Moreover, in addition to satisfying the three *Howey* elements, Defendant contends (and GAP does not dispute) that a plaintiff alleging an "investment contract" must also allege a fourth requirement, namely that the investment was offered to several potential investors, not just it.  *See Mace Neufeld Prods., Inc. v. Orion Pictures Corp.*, 860 F.2d 944, 946 (9th Cir. 1988) (citing *Marine Bank v. Weaver*, 455 U.S. 551, 559–60 (1982)).  In other words, the plaintiff must aver that the investment scheme was *not* a single unique agreement, negotiated one-on-one, without any intention of the investment agreement being publicly traded.  *See id.*

Here, again, GAP fails to allege a security.  GAP does not allege that someone else was responsible for the essential managerial efforts that would affect the success or failure of the venture.  To the contrary, the allegations in the TAC— and relevant documents such as the HOA and SHA—indicate GAP's expertise and effort were crucial to the success of Ascent and converting the Property into a hotel, and that control over management of Ascent was at least shared equally. *See, e.g.*, TAC ¶¶ 18, 24, 84, 94; ECF No. 45-5.  In addition, the TAC contains no allegations that investment in Ascent was offered to other parties; instead, the

23

allegations suggest only it was a single unique agreement negotiated one-on-one. *See, e.g.*, TAC ¶¶ 18–49; ECF No. 45-5.  Thus, GAP has not alleged a security under federal law on this basis.

The same is again true under the investment contract test under Hawai'i law, which similarly requires that "the offeree does not receive the right to exercise practical and actual control over the managerial decisions of the enterprise." *State by its Comm'r of Sec. v. Haw. Mkt. Ctr., Inc.*, 52 Haw. 642, 649, 485 P.2d 105, 109 (1971).  As discussed above, GAP has not pointed the Court to any allegation that it lacked the right to exercise practical and actual control over the managerial decisions of the enterprise—and the relevant documents suggest the opposite was true.  Moreover, GAP does not respond to Defendant's argument—and thus concedes—that the share transfer is not covered under Hawai'i law for the independent reason that it fits within multiple exceptions to that law.  *See* ECF No. 34 n.13 (citing HRS § 485A-202(a)(10), (a)(13)); *see also* ECF No. 56 at 18 (same).

For these reasons, the Court GRANTS Defendant's motion to dismiss Count VI.

## G.    Conspiracy to Defraud (Count VII)

In Count VII, Plaintiffs allege that Defendant and Mr. Coupe conspired to defraud them.  *See, e.g.*, TAC ¶ 99.  Defendant argues this claim must fail, citing

24

case law that notes that an officer of a corporation cannot conspire with that corporation. *See* ECF No. 52 at 34–35 (citing *Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co.*, 91 Hawaiʻi 224, 253, 982 P.2d 853, 882 (1999)). First, *Robert's Hawaii* does not say that two individuals—an officer and an owner of the same company—cannot conspire with one another under Hawaiʻi law. Further, *Robert's Hawaii* "recognize[d] that, when officers of a corporation act for their own personal purposes, they become independent actors, who can conspire with the corporation." 91 Hawaiʻi at 253, 982 P.2d at 882 (internal quotation marks and citation omitted). Here, Plaintiffs have sufficiently alleged that both Defendant and Mr. Coupe were acting for their own personal purposes. *See* TAC ¶¶ 71, 100. Thus, Defendant has not demonstrated at this stage that Plaintiffs' conspiracy claim necessarily fails.

Nor must the Court consider Defendant's argument, raised for the first time in Reply, that Plaintiffs' conspiracy claim fails because he, acting as an agent of GAIL, was essentially acting as GAIL itself. *See* LR 7.2. Regardless, even if the Court were to accept that this means Plaintiff has essentially alleged a conspiracy between an entity and its owner, Defendant cites no authority that such a conspiracy fails as a matter of law under Hawaiʻi law—again relying only on *Robert's Hawaii*'s recognition that a corporation cannot conspire with its officers. Further, the case Defendant cites for this agency principle also recognizes that

"when directors or officers act outside the scope of their official capacity, they no longer act as agents of the corporation and therefore act as a third party." *Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel*, 113 Hawaiʻi 251, 274, 151 P.3d 732, 755 (2007) (citation omitted).  Here, Plaintiffs have alleged facts sufficient to allege that Defendant acted outside the scope of his official capacity, e.g., by acting out of self-interest and by improperly abdicating his role to Mr. Coupe.  *See, e.g.*, TAC ¶¶ 9, 13, 71, 95–96, 100.

At this stage, then, Defendant has not demonstrated the claim fails as a matter of law and the Court therefore DENIES his motion to dismiss Count VII.

## H.    Punitive Damages (Count VIII)

Defendant contends that Count VIII must be dismissed because punitive damages are a type of remedy rather than a separate claim for relief.  Plaintiffs concede as much.  *See* ECF No. 55 at 34.  The Court therefore construes Count VIII to be an extension of Plaintiffs' prayer for relief.  Accordingly, the Court GRANTS Defendant's motion to dismiss Count VIII as a separate claim, with the understanding that Plaintiffs may continue to pursue punitive damages as a remedy.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss as to Counts VI and VIII and **STRIKES** Count III, but otherwise

26

**DENIES** the Motion.  Because amending the TAC is not necessarily futile, the

Court grants Plaintiffs LEAVE TO AMEND consistent with this Order.  An

amended complaint must be filed no later than October 2, 2020.  Leave is not

granted to add new claims or new parties.  Leave to add new claims or new parties

must be sought through a regularly noticed motion.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, September 3, 2020.



Jill A. Otake
United States District Judge

Civil No. 19-00079 JAO-KJM, *Greys Avenue Partners, LLC, et al. v. Colin Theyers*, ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS